on behalf of Mr. Garcia. At its very core, the Fourth Amendment protects us against the government's entry into our homes in seizure based on mere suspicion. That protection is implemented by the requirement of probable cause, and it's probable cause that prevents the police from entering based on what the framers would call a general warrant. Mr. Garcia was denied that protection in this case. In this case, the police entered his home based on nothing more than rank speculation and mere suspicion that he might have been a criminal. And there's no evidence that the police entered his home based on mere   and mere suspicion that he might have been a criminal. And in this case, there's almost nothing in it that connects them at all to criminal activity. And there's almost nothing in it that connects them at all to criminal activity. And in this case, the police entered his home based on mere suspicion that he might have been a criminal. And there's almost nothing in it that connects them at all to criminal activity. Yes, Your Honor. Of course, that's the very standard under the law for determining probable cause for a discorded warrant. And we would submit in this case it fell far short of that. What we had here was some unidentified concerned citizen stating that he believed someone named Gacha was selling crack cocaine. It was only a belief based on a report that people were coming to his house at all hours and staying only for a few minutes. Then we had a month later, the police went to that location and surveilled for about half an hour and saw four people come to the man's door, stay for a few minutes and leave. About a month later, someone else surveilled for another half hour, saw three people come to the man's door, stay for a few minutes and leave. That's it. No one saw anyone with any narcotics. No one saw anyone with any packages. No one claimed to have been inside the house and seen him selling anything. No one claimed that there was no information that this man was a narcotics seller. All we have are seven people coming to his house and leaving after a short period of time. Now, obviously, that could be consistent with narcotics sale, but it's certainly consistent with many other innocent activities and alone cannot support entry into the man's house. For all we know, he could have been selling something out of his house that was perfectly legal. He could have been renting a room and people were coming to inquire. There could have been all kinds of reasons why there would be seven people come to his house and stay for some short period of time and leave. We would credit that much more if this concerned citizen informant saw Gato selling drugs or had some reason to believe Gato was selling drugs other than what the person said. He said he saw nothing more than what the police saw, that a number of people came to this man's house and stayed for some short period of time and left. There's no quantification of that. Maybe he was really popular, had a lot of visitors. We really don't know. All we know is that there are some people coming to his house. There is no indication of illegal activity. There might be some speculation that illegal activity is going on, but there is nothing. We have the informant and then we have that the affiant recognized or he saw this male Hispanic at the house who lived there and he recognized him from a booking photo of a person he did identify and connected him with the moniker Gato. So those two things are linked with the informant. I grant you that that links the informant's information that Gato is selling drugs and that, I mean, that Gato lives there and that Mr. Garcia might be Gato, but it doesn't suggest in any way that he's selling drugs other than the people coming to the door and leaving after a short period of time. That's it. That's all we have in this case. People coming in the door and leaving after a short period of time. How important to your position is the discrepancy between the informant being someone who was known or someone who was anonymous? That probably bears more heavily on the whether there was a good faith belief here, given that the nature changed, but in terms of the probable cause calculation, I don't really think it makes that much difference because the information given by the informant was not at all very, didn't establish criminal activity, didn't establish probable cause. In most cases, you'll have an informant that says, I was in there, I saw the drugs, or I bought the drugs from this person, or I saw this person selling drugs. We don't have any of that. The informant here doesn't really provide anything that's all that incriminating. The informant says, I see people coming to his house. Again, I submit that people coming to someone's house and staying a short period of time is not sufficient to enter that man's house and search it. It's just not enough. No cases, there is no cases cited by the government, there are no cases upholding a search based on such thin information. There has to be something connecting him to narcotics activities besides the mere presence of foot traffic. What about the good faith exception? Again, given that this affidavit is so lacking in probable cause, we have nothing connecting him to narcotics activity beyond foot traffic. I understand that. The good faith objection doesn't, exception doesn't occur until you have that situation. Right. The good faith exception is a police officer receiving the warrant, looking this over in good faith, went ahead and made the, relied upon the magistrate to do his job. Well, we would submit that in this case, that we have an exception where the affidavit is so lacking in additional probable cause as to render his official belief in its applies. That is. What's your closest case for your position on the good faith, on lack, on inability to use the good faith exception? Well, I would submit that actually the case cited by the government. That the best case you have is one cited by the government? Yeah, that was, that found good faith, but found the case to be very close. If you examine that case, and I'll give you the name, Foley. Which case? U.S. v. Foley, 24th, 1059, where they found good faith, but they found it to be a very close question. And if you look at that case, there was way much more indicia of criminal activity and a probable cause than exists in this case. In this case, there's almost nothing. The other exception to the overcoming good faith is where there's some indication that the affiant, in this case, Deputy Welch, misled the magistrate. And although we can't be sure, certainly the pattern of changing the status of this informant from confidential to anonymous back to known informant based on the legal issue involved suggests that there might be some misleading going on here. We never had a hearing on that, so I can't say as I stand here before that that's exactly the case. But certainly that's something that could be explored on this issue as well. Do we need to read the sealed testimony as far as your case is concerned? I believe so, Your Honor. I believe that would at least shed some light on it. But bearing in mind that the defense was excluded at that proceeding, so there was no. That's why we have in-camera hearings. There was no opportunity to examine them. Okay. Thank you. Thank you, counsel. Good morning. Mark Krause, United States. The District Court properly found that a substantial basis supported the finding of probable cause. The affidavit contained a number of interlocking facts that established that there was a fair probability that crack cocaine would be found in 3390 Alma.  It's the number of facts that were contained in the affidavit, and I'd like to take a moment to review those facts. Not only was there the tip from the concerned citizen informant, but that tip was quite detailed. That tip articulated when these drug sales were taking place at all times of the day and night. It described the manner in which these transactions would take place, frequent, short meetings. It described where they took place, 3390 Alma, who was transacting them, a man known as Gatto. He used transactions and transacting. Where does he say that at the concerned citizen? I would direct the Court's attention, just for consistency's sake, because there's a number of affidavits contained in the excerpts of record. I'll work off what's been marked as excerpts of record, page 14. Well, wait a minute. I've got the statement of probable cause in front of me, the affidavit. Yes. I would direct the Court's attention to what the fourth line down is, the line beginning with the word only. The sentence in there, the informant believes Gatto is selling crack cocaine. He's selling crack cocaine. He believes it. But there's nothing in here that he's seen the transaction. There is no statement in the affidavit saying he personally, he or she personally saw a transaction involving crack cocaine. So transaction is perhaps a word that's a little strong for this affidavit as to what this concerned citizen is advising. Well, the informant does say that the informant believes that Gatto is selling crack cocaine, and I think it's a reasonable inference. Crack cocaine is not something that people give away. The informant believes Gatto is selling crack cocaine. I understand there's a lot of traffic, and I understand he has a point of view. But to call these transactions seems to me to go a little further than the affidavit unless I'm missing something. I apologize, Your Honor. If you'd also look at the first line, that's probably the weaker of the two statements. Within the last month, I received information from a concerned citizen informant who said a person named Gatto was selling drugs from the residence. There is a direct statement there, not just based on information and belief. Okay. I've got it. Thank you. With respect to the other details contained in this tip from the concerned citizen informant, it identifies the identity, the location, the kind of drugs, the time of day that these transactions occurred, and the manner in which these transactions took place. Those tips were corroborated by law enforcement over a period of two months. During two periods of surveillance, two different officers went to 3390 Alma and observed conduct consistent with that observed by the concerned citizen informant. They saw frequent short meetings. Each of the periods of surveillance only took place for half an hour, yet in the first period of surveillance, four separate individuals showed up at 3390 Alma and engaged in a short meeting consistent with what was contained in the tip. What's more, during this surveillance, the affidavit deputy Walsh was able to identify the person involved in these transactions and using departmental resources determined that that person was a man named Gatto. What's more, Gatto had a criminal record, and not just any kind of criminal record. In addition to two vehicle code violations, he was on probation for a prior narcotics conviction. This is a factor that was properly considered by the issuing court and the district court in determining whether there was probable cause, further corroborating the claim that there were drugs being sold from the residence. In addition to these two periods of surveillance, the officers also were able to evaluate both their observations and the tip's credibility based on their expert opinion. What was the prior narcotics violation? I don't know. I'm not familiar with the code section. The code sections that are referenced in the affidavit relate to vehicle code violations. The affidavit only refers to a prior narcotics violation. As indicated in the record, the defendant had suffered a prior narcotics conviction related to crack cocaine. If I could direct the Court to say. Possession or use? I believe it was possession for sale. If the Court would turn. Possession for sale. If the Court would turn to page 57 of the excerpts of record, the defendant had suffered a conviction for a violation of Health and Safety Code section 11351.5, possession, purchase cocaine base for sale. Okay. Thank you. Another factor that the Court properly considered, which is omitted by defendant in his argument this morning, was the expert opinion provided by the officers. They described how these transactions were consistent with the sale of narcotics and the district court and the issuing court properly relied on that opinion. So there were a series of interlocking factors that established the presence of probable cause. Leaving aside the issue of probable cause, there is, of course, the good faith exception. And here there was more than just a plausible theory that this residence would contain crack cocaine and someone selling crack cocaine. As I've already indicated, there was the tip from the concerned citizen informant, a tip that was corroborated by two periods of surveillance, by two narcotics officers and their opinion regarding that surveillance, as well as the defendant's criminal record. Defendant in his opening brief notes that the government did not respond to one of the cases cited in their opening brief, and I'd like to take a moment to address that case, the Ibarra case. That case is distinguishable on three grounds. First, Ibarra did not involve a warrant. That was a warrantless search of a residence. Therefore, the good faith exception was not reached by this Court. What's more, Ibarra really addressed a different issue. In the Ibarra case, the government sought to establish probable cause by saying that a target residence contained drugs because the friends of friends of the people who were residing in that house were involved in drugs. So, and in fact, it wasn't just two degrees of separation as characterized by this Court, but really three degrees of separation. Because in the Ibarra case, what the government did is they said, okay, the people who were visiting the house came up in cars that were registered to somebody else. And those somebody else, they were related to someone involved in narcotics. And the district, this Court found that it's not enough that someone associates with people who are involved in the narcotics trade to establish probable cause. But, of course, that's not what happened here. It was the defendant himself who had suffered the conviction. It was the defendant himself who was on probation. So there were a number of interlocking facts. There were a number of facts relied upon by the issuing court and the district court to establish more than just a plausible theory for good faith. And as a consequence, although there was probable cause, the Court could alternatively find that good faith supported the warrant. I'd like to take a moment to talk about the confidential informant issue, unless the Court would like me to address any further issues on probable cause or good faith. Well, your opponent said that that issue didn't really make much difference to the analysis, but he did ask us to review the sealed transcript, which we've been unable to get. I saw from the Pacer printout that the Court has ordered it. It's certainly the government's position that the Court need not look at it. The defendant made no showing, let alone the substantial showing required under Rivario to require disclosure. He has not articulated any basis for believing that this information would be useful in his defense. He can only offer speculation, and as this Court has repeatedly held, speculation is not enough. If the Court is inclined to review the materials, the government would simply ask that they still remain under seal and in camera, as the district court decided that that was the proper way in which these materials should be treated in light of the defendant's safety of the informant. So it's the government's position it's not necessary because no showing has been made by the defendant, and substantial mitigating considerations would play a role. If the Court would like, I could file a notice under Rule 2712 to ensure the matter those items could remain under seal, but I don't want to overload the clerk's office with additional paper. If the Court would prefer that I not file it, I will not file it. I'll go ahead and file it. All right. Thank you, counsel. Thank you, Your Honor. I think, yeah, 38. I was going to say 40 seconds left. I'll try to make use of this. Just two quick responses. One, and they both have to do with the warrant. Although the first line of that does say that a person was selling drugs, it goes on to explain the reason for believing that, and at the end it says he only believed that Dato was selling drugs. So there's really no solid evidence that this person ever saw Dato selling drugs. This person saw foot traffic. Second, the conviction was for a primary offense of narcotics, and that's all that's in the warrant, in the affidavit. Although the government makes reference to a position, conviction for possession of cocaine based for sale, that information is not part of the affidavit and was not part of the issuance of this warrant. And certainly the magistrate can't rely on that, and this Court can't rely on it in determining whether it was probable cause. All right. Thank you very much, counsel. U.S. v. Garcia will be submitted. We will take up U.S. v. Pulliam. Pardon me? All right. We're going to skip U.S. v. Pulliam as one of the counsels next door on another matter. Dawson v. Roe is submitted on the briefs, and we will take up Cook v. Newland. We've got Cooks now. Cooks.
judges: Wallace, T. G. Nelson, Wardlaw